IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD PORRAS,

      Plaintiff,

                                        Case No. 1:19-CV-00367-MV-KK

v.

CORECIVIC, INC., et al,

      Defendant.


**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on Defendants' Motion to Dismiss the Second Amended Complaint [Doc. 38] and Plaintiff's Motion to Amend the Complaint [Doc. 124]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that Plaintiff's Motion to Amend is not well-taken and will be denied and Defendants' Motion to Dismiss is well-taken and will be granted, although Mr. Porras will be given an opportunity to file a new motion seeking leave to amend, consistent with this Opinion.

**BACKGROUND**

The relevant facts as alleged in the Second Amended Complaint are as follows. Richard Porras ("Plaintiff") was a federal detainee in custody at the Torrance County Detention Facility (TCDF) in Estancia, New Mexico. Doc. 37 ¶¶ 3-4 (characterizing him as an inmate but noting that the facility held "federal and state detainees"); *c.f.* Doc. 38 at 2, n.3 (characterizing him as a federal pre-trial detainee). TCDF is a private prison facility operated by CoreCivic, Inc., one of the defendants in this case. Doc. 37 ¶ 4. At the time of the incident, CoreCivic housed federal and state detainees at TCDF pursuant to correctional services agreements with various

government entities. *Id.* The Second Amended Complaint divides the other defendants into two

categories. Defendants Freeman, Troglin, Viramontes, Lewis, Flores, Honeycutt, Lopez, Gardea,

Miller, and Gonzales are "Officer Defendants." *Id.* ¶ 5. Defendants Gallegos, Perry, and Trujillo

are "Nurse Defendants." *Id.* ¶ 6. At all relevant times, CoreCivic "employed, retained, trained,

and exercised direct supervisory control over" Officer Defendants and Nurse Defendants, *id.* ¶ 4,

and they were acting "within the scope of their duties and employment." *Id.* ¶¶ 5-6. Plaintiff

alleges that Defendants were acting "under the color of law" but does not specify in the Second

Amended Complaint whether that refers to state or federal law. *Id.*

On May 17, 2017, at approximately 8:18 PM, Plaintiff was in Section 7, Block C ("7C")

speaking with someone on the phone as he prepared to end his day. *Id.* ¶¶ 7-8. While he was on

the phone, roughly 20 inmates were nearby in the 7C dayroom without supervision by any

CoreCivic employee. *Id.* ¶ 9. Roughly one minute later, while Plaintiff was still on the phone,

two inmates came over and attacked Plaintiff. *Id.* ¶ 10. "Both inmates tackled [him], threw him

to the ground, and punched, kicked, and stabbed him in the face and head with a makeshift

weapon apparently crafted from a pen." *Id.* Two other inmates came over, *id.* ¶ 11, and joined in

the attack, which ultimately lasted for "nearly two minutes" and resulted in Plaintiff being left

"under a flight of stairs near the phone." *Id.* ¶ 12. No CoreCivic employee entered the area until

"almost half an hour after the attack." *Id.* ¶ 13. Plaintiff alleges that Defendant Freeman was

"supposed to be monitoring 7C during the relevant time," *id.* ¶ 14, and that Defendant Troglin

was "responsible for conducting safety and security checks in 7C," but that neither of them did

what they were supposed to do and thus left the area of the attack unsupervised and unmonitored

when the incident occurred. *Id.* ¶ 15. Meanwhile, the "hallway cameras were not operating at the

time of the attack." *Id.* ¶ 14. He further alleges that none of the other Officer Defendants "took

any action to supervise or guard the inmates in 7C or to respond to or prevent the attack." *Id.* ¶ 16.

Around 8:47 PM, Defendant Troglin located Plaintiff, who had to be identified by his tattoos, in a "pool of blood, unrecognizable and unresponsive." *Id.* ¶ 17. Around 8:48 PM, "Defendant Gardea entered and began to clear the pod of inmates." *Id.* ¶ 18. Around 8:49 PM, Defendants Viramontes, Lewis, Flores, and Lopez arrived, followed a minute later by Defendant Honeycutt and all three Nurse Defendants. *Id.* ¶ 19. Plaintiff was placed on a gurney around 9:01 PM, *id.* ¶ 20, and transported by helicopter "directly to the University of New Mexico Hospital in Albuquerque," where he arrived at approximately 10:31 PM. *Id.* ¶ 22. He alleges that the "need for specialized care was obvious" since his "injuries were so obvious that even a layperson would recognize them." *Id.* ¶ 21. He claims that his "transportation for emergency medical treatment" was delayed by Officer and Nurse Defendants "such that he did not arrive at the hospital for approximately two hours after the attack ended." *Id.*

Plaintiff suffered "severe physical injuries" as a result of the attack, including "head trauma, bleeding of the brain, broken bones, severe abrasions and swelling on his face and head, blood loss, eye damage, and other serious physical injuries." *Id.* ¶¶ 23-24. He also alleges "serious and ongoing pain and suffering, including emotional distress, fear, and trauma." *Id.* ¶ 24.

As memorialized in records possessed by CoreCivic, Plaintiff had cooperated with the authorities prior to his detention. *Id.* ¶ 25. According to Plaintiff, either that information had been shared with other inmates by CoreCivic employees, or other inmates had impermissibly been allowed to access it. *Id.* He claims that Defendant Officers knew inmates had that knowledge and thus knew but ignored the "grave danger of violence or retaliation" that he faced by being placed

in the general-population pod. *Id.* ¶¶ 26-27. According to Plaintiff, Defendant Officers "knew he was in substantial and imminent risk of injury or death from other inmates," and the four inmates attacked him in retaliation for his cooperation. *Id.* ¶¶ 27-28. Finally, Plaintiff alleges that CoreCivic "had a practice, custom, or policy of short-staffing its facilities and/or leaving inmates unguarded and unsupervised for prolonged periods in common areas," including inmates at high risk of victimization. *Id.* ¶ 29. He claims that all Defendants were aware of these "systemic deficiencies." *Id.*

Plaintiff filed his original complaint pro se on April 22, 2019. Doc. 1. He acquired counsel and filed a First Amended Complaint on January 7, 2021. Doc. 31. He filed the Second Amended Complaint two months later, on March 22, 2021. Doc. 37. The Second Amended Complaint raises five claims, two under federal law and three under New Mexico law. First, he alleges that CoreCivic and Officer Defendants failed to protect him from the attack in violation of the Eighth and/or Fourteenth Amendments. *Id.* at 6-7.[1] Second, he alleges that all Defendants exhibited "deliberate indifference to [his] medical needs," in violation of the Eighth and/or Fourteenth Amendments. *Id.* at 7-8. For each federal claim alleging violations of his constitutional rights, he seeks relief pursuant to 42 U.S.C. § 1983. *Id.* Third, he brings a medical negligence claim under New Mexico law against CoreCivic and Nurse Defendants. *Id.* at 8-9. Fourth, he brings a claim for negligent operation of medical facilities against all Defendants under New Mexico law. *Id.* at 10. Fifth, he brings a tort action against Officer Defendants under New Mexico law for what he alleges to be assault and battery. *Id.* at 11. He requests a jury trial pursuant to Federal Rule of Civil Procedure 38(b). *Id.*

---

[1] The paragraph numeration continues from the facts section through Count I, but then restarts beginning at Count II. To avoid confusion, beginning with the legal claims, the Court cites to the page rather than paragraph numbers in the Second Amended Complaint.

On April 21, 2021, Defendants timely moved to dismiss the Second Amended Complaint for failure to state a claim. Doc. 38. They raise the following seven arguments in support of the Motion to Dismiss. First, relief under § 1983 is unavailable because, since Plaintiff was in their custody pursuant to an agreement with the United States Marshals Service (USMS), a *federal* agency, Defendants were not acting under color of *state* law. *Id.* at 5-6. Second, amendment of the complaint to add requests for relief under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), should be disallowed as futile, since *Bivens* actions cannot be taken against federal contractors. *Id.* at 6-7. Third, insufficient facts are alleged to establish deliberate indifference under the Eighth Amendment as to Officer Defendants, and insufficient facts are alleged to show that CoreCivic had a policy, custom, or practice that was the moving force behind any potential Eighth Amendment violations by its employees. *Id.* at 7-10. Fourth, Plaintiff failed to go beyond conclusory allegations of deliberate indifference to his medical needs in violation of the Eighth Amendment. *Id.* at 10-13. Fifth, the medical professional negligence claim against CoreCivic and Nurse Defendants fails because Plaintiff does not allege any particular way in which he was not provided timely and appropriate medical care such that those Defendants breached a duty of care. *Id.* at 13-14. Sixth, the claim for negligent operation of public medical facilities fails because that cause of action under New Mexico law applies only to public employees operating public facilities. *Id.* at 14. Seventh, the tort claim for assault and battery fails because Plaintiff specifically alleges that he was attacked by four inmates and does not allege any physical contact or attempt at physical contact by Defendants. *Id.* at 15.

Two years later, on May 18, 2023, Plaintiff filed a Motion to Amend the Complaint and attached the proposed Third Amended Complaint. Doc. 124 (Motion to Amend the Complaint); Doc. 124-1 (proposed Third Amended Complaint). The proposed Third Amended Complaint

would drop all Nurse Defendants and all Officer Defendants other than Rhonda Gonzales, Paul

Miller, and Sheila Freeman. Doc. 124-1 at 1. It would also drop three of the five claims in the

Second Amended Complaint while adding an additional claim under the New Mexico

Constitution. Specifically, the three remaining claims would be: (1) § 1983 claim for failure-to-

protect violations of the Eighth and Fourteenth Amendments; (2) New Mexico constitutional

claim for violations of Plaintiff's state-derived rights to due process and to be free from cruel and

unusual punishment; and (3) negligence claim under New Mexico state law. *Id.* at 16-31.

Defendants' Motion to Dismiss the Second Amended Complaint and Plaintiff's Motion

to Amend the Complaint, both of which are contested, are now before the Court for decision.

## LEGAL STANDARD

I.    <u>Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of all or part

of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). A claim has not been stated for purposes of Rule 8 of the Federal Rules of Civil

Procedure, and thus succumbs to a motion to dismiss under Rule 12(b)(6), when the pleading

fails to go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1986)). Plausibility does not

require that it be more probable than not that relief would be granted. *Iqbal*, 556 U.S. at 678.

Instead, to be plausible a claim must "plead[] factual conduct that allows the Court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard

does not require the Court to be "bound by conclusory allegations, unwarranted inferences, or legal conclusions." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir.1994).

II.    <u>Motion to Amend</u>

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted "[i]n the absence of any apparent or declared reason," such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178 (1962) (quoting Fed. R. Civ. P. 15(a)). In the Tenth Circuit, the "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). Undue prejudice most often occurs "when the amended claims arise out of a subject matter different from what was set forth in the complaint and *raise significant new factual issues*." *Id.* at 1208 (emphasis added).

Importantly, some or even an extended delay in seeking leave to amend is not fatal: "Lateness does not of itself justify the denial of the amendment." *Id.* at 1205 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). Rather, the focus is on whether delay places "an unwarranted burden on the court" or places "an unfair burden on the opposing party." *Minter*, 451 F.3d at 1205. The longer the delay, the more likely it will become undue. *Id.* (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). Similarly, the more "it appears that the plaintiff is using Rule 15 to make the complaint a 'moving target,'" the more justified it is for a court to deny leave to amend. *Minter*, 451 F.3d at 1206 (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)).

Further, leave to amend should not be granted where doing so would be futile, *i.e.*, where the amended complaint would nonetheless be "subject to dismissal for any reason." *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997). The "futility question is functionally equivalent to the question of whether a complaint [as amended] may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (citations omitted).

Rule 15 is not the end of the inquiry, however, where a scheduling order has been entered under Rule 16 of the Federal Rules of Civil Procedure that includes a deadline for amendments to pleadings. In that situation, "parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2012). This demonstration of "good cause" is required by Rule 16(b)(4) and is "an arguably more stringent standard than the standards for amending a pleading under Rule 15." *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009). Importantly, it supplements rather than replaces the more lenient "when justice so requires" standard from Rule 15(a)(2). *Gorsuch*, 771 F.3d at 1240.

Rule 16(b)(4) good cause requires the party seeking amendment "to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* (internal marks omitted); Fed. R. Civ. P. 16(b)(4). For example, good cause can be established "if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.* (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668-69 (D. Colo. 2001)). Good cause is not established when the movant fails to "provide an adequate explanation for any delay." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000 (10th Cir. 2018). This bears a "rough similarity … to undue delay analysis under Rule 15." *Minter.* 451 F.3d at 1205 n.4.

## DISCUSSION

Plaintiff's Second Amended Complaint and proposed Third Amended Complaint assert federal constitutional claims and pendent state law claims. As noted above, Defendants move to dismiss the Second Amended Complaint, and oppose Plaintiff's motion for leave to amend, on several grounds. Defendants argue, *inter alia*, that Plaintiff's federal constitutional claims, brought pursuant to § 1983, fail as a matter of law because the Second Amended Complaint includes no facts that, if proven, would establish that they were acting under color of state law when they allegedly violated his federal constitutional rights. Defendants further argue, *inter alia*, that Plaintiff's proposed Third Amended Complaint does not remedy this defect and, accordingly, that granting Plaintiff leave to amend would be futile. For the reasons set forth herein, the Court agrees with these arguments and finds that dismissal of the Second Amended Complaint and denial of Plaintiff's Motion to Amend are warranted on these bases alone. The Court, however, will allow Plaintiff an opportunity to move to amend to remedy the pleading defect identified by Defendants.

As an initial matter, the Court finds that Plaintiff satisfies the "good cause" standard under Rule 16(b)(4), and that Rule 16 thus does not foreclose the Court from granting him leave to amend. The deadline to seek leave to amend was July 23, 2021. *See* Doc. 50 at 2. As justification for filing his motion after the operative case management deadline had elapsed, Plaintiff notes that "[d]iscovery in this case was slow-going in light of COVID-19" and that his neuropsychologist expert was denied entry for a scheduled visit in late 2022 to the Bureau of Prisons medical facility in Florida where Plaintiff was being held during his recovery from the incident out of which this action arose. Doc. 124 at 3. Plaintiff also notes that his initial pro se status and logistical challenges locating and coordinating with deponents who were later

terminated by CoreCivic contributed to the delay. *Id.* at 8. He alleges that those terminations were connected to TCDF ceasing to be a "USMS facility" shortly after the incident, for presumably unrelated reasons, and that each individual whom he wished to depose was among those terminated. *Id.*

Together, the Court finds these explanations sufficient to establish good cause, even given the nearly two years that elapsed between the applicable deadline and Plaintiff's request to amend. Discovery in this case overlapped with some of the most significant surges in COVID-19 cases, which threw a wrench into many litigation logistics. He specifically cites an instance where a neuropsychologist whom his counsel obtained was denied access to the BOP facility where Plaintiff was in custody, despite having an appointment. Furthermore, he notes that locating deponents and coordinating depositions was a challenge because all the scheduled deponents had been terminated by CoreCivic.

Moreover, despite the discovery delays, it does appear that Plaintiff uncovered new information through discovery. The proposed Third Amended Complaint contains considerably more factual specificity than the Second Amended Complaint, as well as new facts. Far from being an abuse of the discovery system to create a moving target through amended pleadings, the proposed Third Amended Complaint appears designed to narrow the scope of the litigation to where the facts as revealed through discovery most strongly point. Defendants correctly note that Plaintiff's proposed Third Amended Complaint adds a new claim. However, given the posture of this litigation – Defendants have yet to file an answer – and given that the new claim does not substantially change the factual scope of the case, the Court does not believe that the addition of this new claim undermines the good cause that otherwise exists.

The question remains, however, whether allowing Plaintiff to file the proposed Third Amended Complaint would be futile. This question is inexorably tied to the question of whether dismissal of the Second Amended Complaint is warranted, as the only federal claims asserted in the Second Amended Complaint, and then the one asserted again in the proposed Third Amended Complaint, are brought pursuant to § 1983. If relief under § 1983 is not available based on those facts, then the federal claims set forth in the Second Amended Complaint are subject to dismissal for failure to state a claim, and the federal claim set forth in the proposed Third Amended Complaint would succumb to the same fate upon a Rule 12(b)(6) challenge. Indeed, Plaintiff's proposed Third Amended Complaint specifically requests that, if relief is unavailable under § 1983, the entire case be dismissed without prejudice so that he can refile in state court. Doc. 124-1 at 24, ¶ 66. Thus, the viability of the Second Amended Complaint and the futility of amendment both turn on whether Plaintiff, a federal detainee, has adequately alleged that CoreCivic, a private correctional facility, and its employees were acting under color of state law for purposes of § 1983 in connection with the incidents out of which this case arose.

In relevant part, § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As such, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting *under color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Whether the violative action occurred under color of state law is a "jurisdictional requisite for a § 1983 action." *Jojola v. Chavez*, 55 F.3d 488, 492

11

(10th Cir. 1995). The state action requirement aims to "further[] the fundamental goals of preserving an area of individual freedom by limiting the reach of federal law" and seeks to avoid "imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Id.* For this reason, no matter the merits of Plaintiff's underlying allegations that his Eighth and Fourteenth Amendment rights were violated based on the failure of Defendants to protect him from this brutal attack, his claim is ineligible for relief unless Defendants acted under color of state, rather than federal, law. Indeed, Plaintiff aptly notes that the "bone of contention" is "whether Defendants were acting under color of state law (as Plaintiff alleges) or color of federal law (as Defendants argue)." Doc. 42 at 4.

A private party acts under color of state law when exercising a "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (internal citations omitted). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State … or by a person for whom the state is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* In the Tenth Circuit, it is settled law that a private prison holding inmates or detainees on behalf of a state is acting under color of state law. *Phillips v. Tiona*, 508 F. App'x 737, 749-50 (10th Cir. 2013) (Corrections Corporation of America acted under color of state law when housing state inmates under contract with the State of Colorado). In support of that conclusion, the *Phillips* Court reasoned that

> inmates assigned to private prisons remain officially in the custody of the [Colorado Department of Corrections (CDOC)], and the CDOC retains sole authority to assign and transfer inmates, make final determinations on disciplinary matters affecting liberty interests, make decisions that affect sentences or time served, including earned time credits, make recommendations to the state board of parole, develop work requirements, and determine eligibility for any form of release from a correctional facility.

*Id.* at 751. In other words, the private prison in *Phillips* acted under color of state law because the state remained the formal custodians of the inmate-plaintiff and retained the exclusive ability to make crucial decisions over his liberty interests and the conditions of his confinement.

Plaintiff directs the Court to district court decisions extending this reasoning to allow federal inmates to proceed with a § 1983 action against state prisons holding them pursuant to a contract with a federal agency. Doc. 124-1 at 23, ¶ 65. For example, in *Dushane v. Sacramento Cnty. Jail*, the Court held that "a federal inmate being housed in a city jail under a contract between the federal government and the city could sue jail staff under § 1983 because the defendants interacted with the federal inmates pursuant to authority granted by the city (and derived from the state)." No. 13-cv-2518, 2014 WL 3867468, at *2 (E.D. Cal. Aug. 6, 2014). Similarly, in *Dorantes v. Nye*, the court assumed jurisdiction under § 1983 for a claim brought by a federal prisoner "against officials at the Grady County Jail based on an incident which occurred while [the plaintiff] was temporarily housed there." No. 22-cv-50, 2022 WL 1097093, at *1 (W.D. Okla. Feb. 28, 2022). These cases, however, do not speak directly to the distinct issue here, where Plaintiff was a federal detainee in a private correctional facility, rather than in a state correctional facility.

Plaintiff argues that the reasoning of *Phillips* should be extended to the facts here, because "Defendants, as (privately contracted) officers of the *Torrance County* Detention Facility, wielded authority derived from the state (and its political subdivision), and thus acted under the color of *state*, not federal law." Doc. 124-1 at 23, ¶ 65 (emphases in original). According to Plaintiff, Defendants "exercised their power—to detain, house, supervise, monitor, and medically treat detainees within [TCDF] (in other words, the traditional public function of prison operations)—solely by virtue of CoreCivic's contract with the Torrance County

government." Doc. 42 at 5. Plaintiff reasons that, because CoreCivic has a contract with the

County, "it is performing a public function traditionally reserved to the state." *Id.*

Conversely, Defendants contend that the "authority to maintain custody of federal

prisoners [] is created by federal law, and is reserved solely to the federal government." Doc. 38

at 5. Thus, they argue, "correctional officers at a privately owned prison under contract with the

United States Marshals Service are federal actors performing an exclusively federal function."

*Id.* at 5-6. Defendants cite several district court decisions holding that private prison employees

are federal actors when the private prison houses federal detainees or inmates. *Id.* at 6 n. 4; *see*

*Yassin v. Corr. Corp. of Am.*, No. 11-cv-0421, 2011 WL 4501403, at *3 (S.D. Cal. Sept. 27,

2011); *Benson v. Corr. Corp. of Am.*, No. 4:08-cv-469, 2009 WL 2461016, at *3 (N.D. Ohio

Aug. 7, 2009); *Gonzalez-Jarquin v. Corr. Corp. of Am.*, No. 3:08-cv-013, 2008 WL 3285764

(S.D. Ga. Aug. 8, 2008).

Notably, Defendants cite to a case within the Tenth Circuit, *Burke v. Corr. Corp. of Am.*,

in which the District Court for the District of Kansas considered the analogous situation of a

USMS detainee held at a facility run by Corrections Corporation of America (CCA), the

predecessor to CoreCivic. No. 09-cv-3068, 2009 WL 1631579 (D. Kan. June 10, 2009). The

*Burke* Court found that, since the "plaintiff appear[ed] to be in the custody of the USMS, and

[was being] held in the CCA[] facility pursuant to a contract between the CCA and the USMS

for confinement of federal prisoners," there was "nothing in the complaint to support a finding

that any named defendant acted under color of state law rather than federal law." *Id.* at *2. Thus,

the court concluded that § 1983 relief was not available to the plaintiff. *Id.*

As in *Burke*, this Court finds that neither the Second Amended Complaint nor the

proposed Third Amended Complaint contains facts that, if proven, would establish that

Defendants acted under color of state law. Both the Second Amended Complaint and the proposed Third Amended Complaint allege that TCDF houses both federal and state inmates or detainees, and that, at all relevant times, there was a contractual relationship between the state (inclusive of localities deriving their power from state law) and CoreCivic, related to the operation of TCDF. The existence of a contractual relationship between the state and CoreCivic, however, neither equally alleges that Plaintiff was being housed at TCDF pursuant to that relationship nor establishes the absence of a separate, distinct relationship between USMS and CoreCivic. In fact, up until the Motion to Amend the Complaint, which included the proposed Third Amended Complaint, Plaintiff appears to avoid characterizing the federal government's relationship with CoreCivic as it relates to his detention. In the Second Amended Complaint, Plaintiff asserts that, at the time of the incident, Defendants were "providing services in the facility pursuant to a contract between the State and CoreCivic." This fails to specify whether Defendants were providing services *to Plaintiff* pursuant to that contract. Doc. 37 at ¶¶ 5-6. However, in the proposed Third Amended Complaint, he describes the attack as having occurred "just a few short months before the notorious private-prison company CoreCivic would lose its contract with the U.S. Marshals Service to operate the federal pretrial detention center in Torrance County." Doc. 124-1 ¶ 1. Similarly, as noted *supra*, Plaintiff's Motion to Amend the Complaint states that "TCDF closed down (as a USMS facility) in 2017." Doc. 124 at 8. Plaintiff thus alleges a direct contractual relationship between USMS and CoreCivic.

Moreover, neither the Second Amended Complaint nor the proposed Third Amended Complaint contains factual allegations that, if proven, would establish that the state had the sort of control over Plaintiff that the Tenth Circuit considered essential in *Phillips* to warrant the finding that the private prison at issue acted under color of Colorado law. In short, there is no

indication in either the Second Amended Complaint or the proposed Third Amended Complaint that New Mexico, Torrance County, or any other localities in New Mexico were Plaintiff's formal custodians with the authority to dictate the conditions under which CoreCivic confined Plaintiff or to make crucial decisions regarding his liberty interests.

At the pleading stage, Plaintiff bears the burden of stating facts that "satisfy the under-color-of-state-law element" of his § 1983 claim. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Neither the Second Amended Complaint nor the proposed Third Amended Complaint meets this burden. The Second Amended Complaint, as written, leaves open the very real possibility that CoreCivic held Plaintiff, a federal detainee, under an agreement with the federal government, and housed state detainees pursuant to an entirely distinct agreement with state governmental entities. If that is the case, then the fact that CoreCivic employees were clothed with state authority as to state detainees would not equally mean that they were clothed with state authority as to *all* detainees. As discussed *supra*, however, Plaintiff's Motion to Amend the Complaint and the proposed Third Amended Complaint resolve that ambiguity, acknowledging that USMS did have a contract with CoreCivic that ended only months after Plaintiff was attacked. That contract, which Plaintiff alleges had yet to be terminated at the time of the attack, was presumably the legal instrument that authorized CoreCivic to hold him in custody.

Because the Second Amended Complaint thus fails to allege facts that, if proven, would establish that Defendants were acting under color of state law for purposes of § 1983, Plaintiff's federal constitutional claims must be dismissed. In addition to his federal constitutional claims, Plaintiff asserts three claims arising solely under state law, namely, claims of medical negligence, negligent operation of medical facilities, and a tort action for assault and battery. The Court's pendent jurisdiction over these state law claims "is exercised on a discretionary basis,"

and the Tenth Circuit has generally held that "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citations omitted). The Tenth Circuit has explained its general disinclination "to exercise pendent jurisdiction in such instances because notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id.* at 1230. Applying this precedent, the Court finds that Plaintiff's state law claims are best left for the state court's determination. *Id.* Accordingly, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims and will dismiss them without prejudice. *Id.* The Court notes that this result is consistent with Plaintiff's request.[2]

Additionally, because the proposed Third Amended Complaint fails to allege facts that, if proven, would establish that Defendants were acting under color of state law for purposes of § 1983, the Third Amended Complaint would be subject to dismissal if challenged under Rule 12(b)(6). Accordingly, granting Plaintiff leave to file the Third Amended Complaint would be futile. The Court thus will deny Plaintiff's request for leave to amend. Nonetheless, the Court will give Plaintiff 120 days to file a motion for leave to amend, attaching a proposed amended complaint to such motion. Such proposed amended complaint must plead facts that, if proven, would establish that Defendants acted under color of state law. Within the Tenth Circuit, *Phillips* gives Plaintiff a roadmap for the kinds of facts that, if proven, could sustain a finding that private prison employees act under color of state law. 508 F. App'x at 751. For example, was the state authorized to make final determinations about disciplinary matters affecting Plaintiff's liberty

---

[2] Also consistent with Plaintiff's request, the Court declines to analyze whether relief would be available under *Bivens*.

interests? Was the state authorized to made decisions affecting Plaintiff's sentence, or the amount of earned-time credit he receives? Was the state authorized to make a final determination on whether Plaintiff was eligible for release at any point? The Court recognizes that plaintiffs face significant logistical and legal impediments to conducting discovery in the context of a private-prison defendant. Sometimes plaintiffs lack information that is necessary to even allege facts that can survive a motion to dismiss. To the extent that additional discovery is needed to have enough information to allege in good faith facts that comport with the considerations in *Phillips*, Plaintiff may request permission to conduct that additional discovery. If further discovery is warranted but filing a new motion for leave to amend based on facts generated by that discovery would not be feasible within the 120-day deadline herein imposed, Plaintiff may request an extension of that deadline.

If Plaintiff chooses to file a motion for leave to amend, and Defendants do not consent in writing thereto, it will be "within the discretion of the Court to grant or deny leave to amend." *Foman*, 371 U.S. at 182.  If Plaintiff's proposed amended complaint contains the same deficiencies identified herein, or if leave to amend is otherwise improper based on any of the grounds set forth in Rule 15, his motion for leave to amend will be denied. If Plaintiff does not timely file a motion to amend, this case will be dismissed and a final judgment entered.

Finally, the Court feels compelled to express a growing concern regarding the gap in the federal remedies available to individuals in federal custody whose constitutional rights are violated while being held at a private facility. As already discussed, § 1983 furnishes a cause of action for harms arising out of constitutional torts committed by parties acting under color of state law, which can include situations where the tortfeasor is a state employee or a contractor acting under color of state law. However, when the tortfeasor acts under color of federal law,

plaintiffs can only recover under the implied cause of action established in *Bivens* if the tortfeasor was a federal employee. The Supreme Court has made clear that *Bivens* does not cover constitutional torts committed by private parties acting under color of federal law, which is presumably why Plaintiff explicitly requested that the Court *not* construe his claim as a *Bivens* action. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (declining to extend the implied *Bivens* cause of action to corporate entities); *Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (declining to extend *Bivens* to individual employees of a private prison that held the respondent, a federal prisoner, due to the fact that adequate remedies were available under state tort law). A right is a paper tiger without a corresponding remedy, and when a right is federally guaranteed, the remedy ensuring it should be too. *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right."). Thus, while state causes of action may exist to allow meritorious plaintiffs to recover for constitutional torts committed by federal contractors, this Court remains concerned about the gap in the federal scheme for vindicating rights enshrined in the United States Constitution.

Those concerns are especially pronounced in more rural Western states like New Mexico, Montana, and Arizona that disproportionately rely on private prison facilities. According to the Bureau of Justice Statistics, 6.9 percent of state inmates nationwide were held in private facilities in 2023 (the most recent year for which official data is available).[3] Meanwhile, 29.2 percent of New Mexico inmates, 48.7 percent of Montana inmates, and 28.5 percent of Arizona inmates

---

[3] DEREK MUELLER & RICH KLUCKOW, BUREAU OF JUST. STAT., NCJ 310197, PRISONERS IN 2023 – STATISTICAL TABLES 26 (2025), https://bjs.ojp.gov/document/p23st.pdf.

were held in private facilities in 2023.[4] Those are the three highest percentages among all states.[5] Since federal detainees (or inmates who receive a short term of federal imprisonment) are commonly held in facilities used by states, the reliance on private facilities at a state level also has implications for federal detainees and certain federal inmates in New Mexico and similarly reliant states.

Furthermore, the remedy gap for individuals held in private facilities while in federal custody is increasingly nationally salient amidst the surge in federal detainees resulting from President Trump's aggressive immigration enforcement priorities. Immigration and Customs Enforcement (ICE) holds between 85 percent and 90 percent of its detainees in private facilities.[6] That percentage is likely to go up in the future since the Administration's strategy to increase the total amount of bed space available for immigration detainees appears to largely rely on expanding contracts with private prison companies such as CoreCivic and The Geo Group, Inc.[7] All 20 of the largest ICE detention centers in the country are private.[8] Since the number of ICE detainees grew from 39,238 to 65,735 between January and November 2025, there are tens of thousands of new federal detainees being housed in private facilities compared to just a year ago, all of whom risk having their constitutional rights violated by their private captors while being unable to recover under federal law.[9]

---

[4] *Id.*

[5] *Id.*

[6] *See* TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE, *Immigration Detention Statistics: A Retrospective and a Look Forward* (Feb. 21, 2025), https://tracreports.org/reports/753.

[7] *See, e.g.*, Heather Hollingsworth & John Hanna, *ICE Is Using No-Bid Contracts, Boosting Big Firms, to Get More Detention Beds*, AP NEWS (June 16, 2025), https://apnews.com/article/immigration-detention-centers-ice-deportations-trump-e92b67a388f041b84593d7a29fd93c54.

[8] *Immigration Detention Statistics: A Retrospective and a Look Forward*, *supra* note 6.

[9] *ICE Detention*, TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE, https://tracreports.org/immigration/detentionstats/pop_agen_table.html (last visited Dec. 22, 2025).

## CONCLUSION

The Second Amended Complaint fails to allege facts that, if proven, would establish that Defendants were acting under color of state law for purposes of § 1983. Accordingly, the Court dismisses Plaintiff's federal constitutional claims without prejudice for lack of subject matter jurisdiction. The Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, the Court dismisses Plaintiff's state law claims without prejudice. The proposed Third Amended Complaint fails to allege facts that, if proven, would establish that Defendants were acting under color of state law for purposes of § 1983. Accordingly, the Court denies Plaintiff's request for leave to file the Third Amended Complaint. The Court gives Plaintiff 120 days to file a Rule 15 motion for leave to amend, noting that any proposed amended complaint must cure the deficiencies identified in this Opinion. If Plaintiff does not timely file a motion to amend, this case will be dismissed and a final judgment will be entered.

**IT IS ORDERED** that Defendant's Motion to Dismiss the Second Amended Complaint [Doc. 38] is **GRANTED,** as follows: Plaintiff's claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint [Doc. 124] is **DENIED.**

DATED this 29th day of December 2025.

_____
MARTHA VÁZQUEZ
Senior United States District Judge